IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| ALFRED BOURGEOIS : | |
| : | |
| Plaintiff, : | |
| : | |
| V. : | Civil Action No. 1:12-cv-00782-TSC |
| : | |
| UNITED STATES DEPARTMENT : | |
| OF JUSTICE, et al., : | |
| : | |
| Defendants. : | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION BARRING THE EXECUTION OF
PLAINTIFF ALFRED BOURGEOIS**

Plaintiff Alfred Bourgeois has been challenging the government's execution method for seven years. His claims parallel those asserted in the *Roane* litigation into which his own suit was consolidated last week. *See* ECF 8 (Plaintiffs Roane, Tipton, and Johnson); ECF 23-2 (intervenor Webster); ECF 64 (intervenor Battle); ECF 66 (intervenor Hall); ECF 228-2 (intervenor Paul); *Bourgeois* ECF 12 (amended complaint in Case No. 1:12-cv-00782-TSC).[1] Both suits were placed on hold pending the government's development of a revised execution method. *See* Minute Order of July 29, 2011; Minute Order of November 3, 2011, and subsequent status reports; *Bourgeois* ECF 15. The government explained that ordinary litigation would resume after issuance of a new protocol: "Once the revised lethal injection protocol is available, Defendants will provide a copy to Plaintiffs' attorneys for purposes of developing a schedule for supplemental discovery on the revised protocol and a briefing schedule to be filed with the Court." ECF 288 at 2.

---

[1] Unless otherwise indicated, ECF references are to documents in the *Roane* case, No. 1:05-cv-02337-TSC.

The Court and the parties agreed to this discovery and pleading schedule last Thursday. That development is of uncertain benefit to Mr. Bourgeois, against whom the government unilaterally scheduled an execution and, at the same moment, announced the method by which it intends to carry out that execution. ECF 385, 389-1; *Bourgeois* ECF 18, 19. In the meantime, throughout the course of the *Roane* litigation, the Court had entered preliminary injunctions in favor of each of the Plaintiffs and intervenors, enjoining the scheduling of their executions pending further order of the Court. ECF 5, 27, 67, 68, 336. One of those intervenors, Jeffery Paul, was initially denied leave to intervene. ECF 259, 260. The Court of Appeals reversed that denial and remanded the case, after which this Court enjoined Mr. Paul's execution as it had the others. *Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014); ECF 333, 336.

Mr. Bourgeois, for his part, filed a separate suit after Mr. Paul had been denied leave to intervene in 2010 but before that denial was reversed on appeal in 2014. *Bourgeois* ECF 1, 12. He now stands in the shoes of his predecessor *Roane* Plaintiffs, and his execution should be enjoined just as theirs were.

## Statement of Facts

On May 15, 2012, Mr. Bourgeois filed a Complaint challenging the Bureau of Prisons' execution protocol and method. *Bourgeois* ECF 1. He filed an amended complaint seven months later. *Bourgeois* ECF 12.

At the time Mr. Bourgeois filed these complaints, a virtually identical suit challenging the Bureau of Prisons' execution protocol and method was pending in this Court. *Compare* ECF 8 *with Bourgeois* ECF 12. The two complaints asserted not only that the previous three-drug method amounted to cruel and unusual punishment under the Eighth Amendment, but also that the Defendants were violating the prisoners' due process rights by not adequately disclosing the means by which the prisoners were to be executed, as well as numerous other claims.

2

Prior to the filing of Mr. Bourgeois' Complaint, on October 6, 2009, death-sentenced prisoner Jeffrey Paul moved this Court for leave to intervene in the *Roane* action. ECF 228. On July 1, 2010, this Court issued an Opinion and Order denying Mr. Paul's Motion to Intervene. ECF 259, 260. It later denied Mr. Paul's motion for reconsideration. ECF 294.

On July 29, 2011, the *Roane* litigation was effectively stayed pending the Bureau of Prisons' re-evaluation and revision of its lethal injection protocol. *See Roane*, Minute Order dated July 29, 2011 (no docket number); Minute Order dated November 3, 2011 (no docket number).

On January 23, 2013, the Court entered an order staying and administratively closing the *Bourgeois* litigation because the *Roane* litigation had been stayed. *Bourgeois* ECF 14 (Joint Motion for a Stay, docketed January 23, 2013, ¶ 5); ECF 15 (Order).

On January 24, 2014, after Mr. Bourgeois' case had been stayed, the D.C. Circuit Court of Appeals reversed the Court's order denying leave for Mr. Paul to intervene. *Roane*, 741 F.3d at 152.

In its opinion reversing the Court's denial of Mr. Paul's motion to intervene, the Court of Appeals observed that Mr. Paul's claims were not rendered moot by the government's abandonment of the three-drug protocol, which reflected the mere "voluntary cessation of challenged activity." *Id.* at 150. The Court also reasoned that "not all of the claims in this lawsuit are tied to" the previous three-drug method. *Id.* It pointed out that the prisoners assert a due process challenge that "attacks a refusal to disclose the procedures that will be used to execute them." *Id.* That challenge is "an independent claim that remains live regardless of whether the government can use the particular combination of drugs it has used in the past." *Id.*

On April 3, 2014, and on remand from the D.C. Circuit, the Court issued a preliminary injunction barring the Defendants from scheduling or carrying out Mr. Paul's execution. ECF

336.

The Court issued similar preliminary injunctions in favor of Plaintiffs Roane, Tipton, and Johnson, as well as intervenors Webster, Battle, and Hall. ECF 5, 27, 67, 68. In their individual motions for preliminary injunction, Mr. Paul and the other intervenors asserted an Eighth Amendment claim in addition to others. *See* ECF 26 at 5-9; ECF 63 at 5-9; ECF 65 at 9-10; ECF 334 at 6-10.

> **Argument: The Court should grant a preliminary injunction in favor of Mr. Bourgeois, who makes the same showing that the Court found adequate for the *Roane* Plaintiffs and intervenors.**

Courts consider and weigh four factors before granting a preliminary injunction: (1) the threat of irreparable injury to the plaintiff if an injunction is not granted; (2) the likelihood that other interested parties will suffer substantial harm if injunctive relief is granted; (3) the interests of the public; and (4) the likelihood of the plaintiff's eventual success on the merits. *See Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989); *Wagner v. Taylor*, 836 F.2d 566, 575 (D.C. Cir. 1987); *Dunkin' Donuts Franchising, LLC v. 14th St. Eatery, Inc.*, 102 F. Supp. 3d 334, 336 (D.D.C. 2015) (Chutkan, J.).

Similar standards govern the issuance of a stay of execution, at least when a state prisoner asks a federal court to restrain the state's method of execution. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006) ("[E]quity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts."). *Hill* requires that such a prisoner "satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Id.* In the usual *Hill* scenario, a prosecutor or other law enforcement official has convinced a state court to issue an execution warrant based on a showing that no pending litigation justifies the withholding of a warrant. That is the case in Missouri, Texas, and Georgia, whose methods the Attorney General invoked when defending the

4

protocol he announced on July 25. *See* Mo. Sup. Ct. R. 30.30(d); Tex. Code Crim. Proc. Art. 43.141; Ga. St. § 17-10-40(a); ECF 389-1, at 1 (press release). In this case, by contrast, the Attorney General scheduled Mr. Bourgeois' execution unilaterally, without advance notice, and alongside his announcement of the execution method itself – thereby manufacturing the stay posture that Defendants are likely to invoke as a reason to deny injunctive relief.

This motion seeks a preliminary injunction because the Court has already found the requirements to be satisfied by similarly situated claimants.[2] The Court granted preliminary injunctions in favor of seven prisoners who bring claims that are identical to Mr. Bourgeois'. *See* ECF 5, 27, 67, 68, 336. One of those injunctions – in favor of Mr. Paul – was issued after the Defendants had abandoned the previous three-drug protocol, and after the D.C. Circuit held that the balance of Mr. Paul's claims were not moot. *Roane*, 741 F.3d at 150; ECF 334 at 9-10. Mr. Bourgeois' claims are no less viable than Mr. Paul's.

It makes no difference that the Court granted its previous injunctions without opposition from the Defendants. Even with the litigants' mutual consent, a district court will enter a preliminary injunction "only after considering the public interest and the likelihood of success on the merits." *Andrx Pharm. v. Biovail Corp.*, 256 F.3d 799, 814 (D.C. Cir. 2001) (rejecting argument that the adverse litigants' trade-restraining agreement was equivalent to a "stipulated preliminary injunction"). An agreed-to temporary restraining order likewise requires the same finding of likely "success on the merits," even though the order is preliminary and allows the

---

[2] This motion does not involve the merits of the specific claims that Mr. Bourgeois will eventually assert against the Defendants' newly-announced protocol. He intends to bring such a motion if it becomes necessary, but otherwise, he intends to develop the merits of his claims alongside the other *Roane* litigants and under the discovery and pleading schedule to which the parties and the Court agreed during last week's status conference.

merits to be contested later. *Parker v. District of Columbia*, No.14-cv-02127 (RC), 2015 WL 7760162, at *2 (D.D.C. Dec. 1, 2015). When this Court issued the several preliminary injunctions in *Roane*, then, it necessarily satisfied itself that the requirements for such relief were met – particularly as against the Sovereign who was seeking to enforce the most serious of its criminal laws. *See Walton v. Arizona*, 497 U.S. 639, 653 (1990) ("Trial judges are presumed to know the law and to apply it in making their decisions."), *overruled on other grounds by Ring v. Arizona,* 536 U.S. 584 (2002).

The Court knew and followed the law when it enjoined the executions of Mr. Paul and the others. It should follow the same law and enjoin the execution of Mr. Bourgeois, who brought the same claims at the same time.

Dated:  8/19/2019                               Respectfully Submitted,


/s/ Alex Kursman
Alex Kursman, Assistant Federal Defender
Pro Bono Counsel Pursuant to Local Rule 83.2(g)
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – alex_kursman@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Alfred Bourgeois*

## **CERTIFICATE OF SERVICE**

I certify that on August 19, 2019, a copy of the foregoing Statement of Points and Authorities in Support of Motion for Preliminary Injunction was filed using the CM/ECF system, which will then send notification of such filing to all counsel of record.

/s/ Alex Kursman
Alex Kursman, Assistant Federal Defender
Pro Bono Counsel Pursuant to Local Rule 83.2(g)
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – alex_kursman@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Alfred Bourgeois*